UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STERLING ROBINSON,<br>    Petitioner, | Case No. 2:23-cv-89 |
| | Watson, D.J |
| vs. | Bowman, M.J. |
| WARDEN, MADISON CORRECTIONAL<br>INSTITUTION<br>    Respondent. | **REPORT AND<br>RECOMMENDATION** |

# REPORT AND RECOMMENDATION[1]

Petitioner, a state prisoner proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court to consider the Petition (Doc. 1), the Return of Writ (Doc. 5), and the state court record. (Doc. 4). Also before the Court is Petitioner's Motion for Summary Judgment (Doc. 13).

For the reasons that follow, it is **RECOMMENDED** that Petitioner's Motion for Summary Judgment be **DENIED**, and this action be **DENIED** and **DISMISSED**.

## I.    FACTUAL BACKGROUND

On October 30, 2018, a Franklin County, Ohio grand jury indicted Petitioner on two counts of trafficking in cocaine. (Doc. 4 at PageID #35-38). On April 12, 2019, Petitioner advanced a

---

[1] The Court notes that Petitioner has filed a writ of mandamus in the Sixth circuit. However, the filing of a petition for writ of mandamus does not necessarily deprive a district court of jurisdiction. *Ginter v. Whirlpool Corp.*, W.D.Mich. No. 1:08-CV-750, 2009 U.S. Dist. LEXIS 139088, at *3 (Aug. 12, 2009) citing *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1416 (5th Cir. 1995). *See also In re Morgan*, 6th Cir. No. 20-6085, 2021 U.S. App. LEXIS 3309 (Feb. 4, 2021).

"sovereign citizen" theory in a *pro se* Motion to Dismiss, arguing that he was exempt from prosecution and the trial court lacked personal and subject matter jurisdiction. (*Id.* at PageID #40-86). The trial court disagreed, and Petitioner was tried by jury on August 5-9, 2019. (*Id.* at PageID #87-88, 274). The Court of Appeals, Tenth District ("Court of Appeals") found that the following facts were adduced at trial:

> {¶ 3} As part of an investigation into individuals believed to be buying and selling drugs in Columbus, Ohio, detectives in the Columbus Police Department's ("CPD") narcotics bureau placed a GPS tracking device on [Petitioner's] vehicle. On February 8, 2018, the GPS tracking device indicated [Petitioner's] vehicle was traveling south out of Columbus, Ohio. The tracking device demonstrated [Petitioner's] vehicle drove through the night to a location near McLeansville, North Carolina, stopped for an hour or less, and then began returning toward Ohio. Detective John Whitacre, the lead detective on the investigation, observed [Petitioner's] vehicle when it stopped at a KFC restaurant near Logan, Ohio on February 9, 2018. Whitacre saw [Petitioner] with another man in the KFC parking lot, observed the two men get into their respective vehicles, and watched as the two vehicles appeared to follow each other on the highway. CPD detectives then asked local law enforcement to initiate traffic stops on the vehicles. During the traffic stops, officers discovered 0.59 grams of heroin and 685.23 grams of cocaine in the vehicle driven by an individual named Todd Seiber but did not discover any cocaine or heroin in [Petitioner's] vehicle.
>
> {¶ 4} On February 20, 2018, the GPS tracking device indicated [Petitioner's] vehicle was traveling west out of Columbus, Ohio. CPD detectives began conducting physical surveillance on the vehicle as it traveled on Interstate 70 West and observed [Petitioner] exit the vehicle when he stopped for gas. When [Petitioner] stopped at a hotel in Bloomington, Illinois, CPD detectives asked local law enforcement to take over surveillance.
>
> {¶ 5} Officer Chad Dumonceaux, a special agent of the Illinois State Police, met CPD detectives outside the hotel in Bloomington. After receiving information regarding the investigation, Dumonceaux began observing [Petitioner's] movements. Dumonceaux saw [Petitioner] come in and out of his hotel room during the evening of February 20, 2018. The following morning, [Petitioner] drove from the hotel to a mass transit hub located in Normal, Illinois, the town adjacent to Bloomington. After returning to the hotel, [Petitioner] eventually left the hotel and drove to the parking lot of a nearby Walmart. Officers then observed [Petitioner] drive to a gas station, go in, and come out "carrying snacks." [Petitioner] returned to the Walmart parking lot and spent the next couple of hours "chang[ing] parking spaces" and getting "in and out of his car." Dumonceaux observed [Petitioner] get out of his car, retrieve "two plastic bags" from the rear of his vehicle, and bring

"those back to the driver's seat." Shortly thereafter, [Petitioner] exited his vehicle and walked into the Walmart. Dumonceaux saw [Petitioner] "carrying a black backpack" as he walked into Walmart.

{¶ 6} [Petitioner] eventually exited Walmart and took a taxi to Normal, Illinois. Dumonceaux observed [Petitioner] exit the taxi, walk around the town of Normal, and stop in a restaurant to eat. Dumonceaux then observed [Petitioner] walk to the bus terminal portion of the mass transit hub. After sitting in the terminal for a while, Dumonceaux saw [Petitioner] walk out the terminal doors toward the buses. Dumonceaux stated that [Petitioner] "maintained possession of the black backpack from the time he exited the taxi until the time" he exited the bus terminal in Normal. When Dumonceaux walked out the terminal doors, he saw [Petitioner] seated on a Trailways passenger bus.

{¶ 7} Whitacre determined which bus [Petitioner] would likely be on when he arrived in Columbus, Ohio, and asked CPD Special Weapons and Tactics ("SWAT") Team for their assistance at the bus station. Officer Tim Halbakken, a member of the CPD SWAT Team, was present at the Columbus bus station when the bus in question arrived. Halbakken explained he had been instructed "to watch for someone that might have a package and may -- once they realize it's the police, may try to separate from the package." As the bus pulled in, Halbakken was "watch[ing] what's happening in the windows" and "key[ed] in on" a person that matched the description of the subject of the investigation. Halbakken observed the person "separate[ ] himself from a bag * * *. He took the bag and put it in the [empty] seat in front of himself, and he was looking around." Halbakken "made a mental note" of the person and the seat where the person set the bag. After the passengers departed the bus, Halbakken went onto the bus and located the bag. Halbakken identified the bag to the detectives present on the scene.

{¶ 8} CPD Narcotics Bureau Detective Jeremy Ehrenborg observed [Petitioner] depart the bus in Columbus. Ehrenborg noted [Petitioner] was not carrying any luggage when he departed the bus. A SWAT officer directed Ehrenborg to "a black bag that was sitting there" on the bus. Ehrenborg took the black bag off the bus, set it on the ground, and ran a canine over the bag. The canine alerted to the black bag. Ehrenborg then unzipped the black bag and discovered a brick-shaped object wrapped in aluminum foil inside the bag.

{¶ 9} Whitacre stood inside the bus station in Columbus and observed [Petitioner] as he departed the bus. Whitacre described how [Petitioner] came into the bus station and kept "look[ing] to see what was going on" outside with the bus. Whitacre stated that [Petitioner] "seemed very nervous." When Ehrenborg brought the black bag off the bus, Whitacre observed [Petitioner] "intently looking at what" the officers were doing with the black bag. As soon as Ehrenborg opened the black bag, [Petitioner] left the bus station. [Petitioner] walked from the bus station to a bar and eventually took a taxi away from the area.

{¶ 10} Testing later revealed that the brick-shaped object from the black backpack contained 1,006.87 grams of cocaine. A bag of Doritos, a bag of cheese curls, a bag of Planters peanuts, a bottle of Ice Mountain water, a Hershey bar, a travel pillow, and a grey jacket were also found inside the black backpack.

{¶ 11} On August 5, 2019, a five-day jury trial commenced. When the jury entered the courtroom for voir dire proceedings, [Petitioner] exclaimed that he was "not a defendant in this case" and that he did "not consent to these proceedings." [Petitioner] voluntarily remained absent from the courtroom throughout the remainder of the trial but was able to see and hear the trial via a live video feed.

{¶ 12} The jury returned verdicts finding [Petitioner] not guilty of trafficking in cocaine as charged in Count 1, regarding the February 9, 2018, incident, but guilty of trafficking in cocaine as charged in Count 2, regarding the February 21, 2018, incident. The court sentenced [Petitioner] to a prison term of 11 years and ordered [Petitioner] to pay a $10,000 fine.

(*State v. Robinson*, 2021-Ohio-3715, ¶¶ 3-12 (internal citations omitted)), (Doc. 4 at PageID #183-196).

## II.     PROCEDURAL HISTORY

On October 10, 2019, Petitioner appealed his conviction and sentence to the Court of Appeals. (Doc. 4 at PageID #129). Petitioner raised two assignments of error:

(1) The verdict of guilt as to drug trafficking is not supported by the sufficiency of the evidence.

(2) The verdict of guilt as to drug trafficking is against the manifest weight of the evidence.

(*Id.* at PageID #134). On October 19, 2021, the Court of Appeals issued a decision affirming the conviction and sentence. (*Id.* at PageID #183-196). Petitioner did not seek further review with the Supreme Court of Ohio.

On February 10, 2022, Petitioner filed a Rule 26(B) Delayed Application for Reopening his appeal. (*Id.* at PageID #197-247). Petitioner argued that his trial counsel was ineffective for failing to file a motion to suppress the evidence obtained from the GPS tracking warrant. (*Id.*). The Court of Appeals issued an opinion on September 8, 2022. (*Id.* at PageID #263-271). The Court

4

of Appeals construed Petitioner's application as arguing that appellate counsel was ineffective for failing to include the ineffective assistance of trial counsel claim in his direct appeal and rejected the claim as meritless. (*Id.*) Petitioner did not seek further review with the Supreme Court of Ohio.

## III. HABEAS PROCEEDINGS

On January 9, 2023, Petitioner, proceeding *pro se*, filed the instant federal habeas petition, raising the following five grounds for relief:

> **GROUND ONE**: A denial of right to effective assistance of trial counsel and appellate counsel. In violation of the Sixth and Fourteen[th] Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution and the Golden Rule of Law, The Treaty Pactum De Singularis Caelum (Covenant), Canon of Positive Law Article 28- Spiritual Rights. Specifically, failure to file a meritorious suppression motion and that the outcome of his trial and appeal would have been different had trial counsel filed a motion to suppress the evidence used to obtain the conviction. This error had a substantial and injurious effect or influence in determining the jury's verdict.
>
> **GROUND TWO**: The trial court was in breach of The Golden Rule of Law, the treaty Pactum De Singularis Caelum (Covenant), Canon of Positive Law Article(s) 141-Judgement and Article 189-Punishment and Article 28-Spiritual Rights 28.1. that divested the Trial court of Subject Matter Jurisdiction that was void ab initio. The trial court procured a contract/judgement that was both "UNLAWFUL and WITHOUT CONSENT." A trial court is required to have the consent of the man or woman acting as Surety to the person for the punishment to be lawful. This is repugnant to due process of law of the 5th and the 14th amendment guaranteed by the United States and Ohio Constitutions. This error had a substantial and injurious effect or influence in determining the jury's verdict. [sic]
>
> **GROUND THREE:** The trial court was in breach of The Golden Rule of Law, the treaty Pactum De Singularis Caelum (Covenant), Canon of Positive Law Article(s) 121-Remedy, Article 187-Injury, Article 188-Offence, Article 28- Spiritual Rights and Article 130-Contract, that divested the Trial court of Subject Matter Jurisdiction that was void ab initio. The indictment failed to identify a named "victim" that was the object of a crime or a "victim" who suffers personal injury as the result of Criminally injurious conduct. As a result, petitioner is actuality innocent. This error had a substantial injurious effect or influence in determining the jury's verdict. This is repugnant to due process of law of the 5th and 14th amendment guaranteed by the United States and Ohio Constitutions. [sic]

> **GROUND FOUR:** The trial court was in breach of The Golden Rule of Law, the treaty Pactum De Singularis Caelum (Covenant), Canon of Positive Law Article(s) 138-Perfidy and Article 151-Honesty, that divested the Trial court of Subject Matter jurisdiction that was void ab initio The presence of a member of the Bar association within any court in any official capacity immediately disqualifies such a venue as being regarded as a competent forum and are null and void from the beginning. This is repugnant to due process of law of the 5th and 14th amendment guaranteed by the United States and Ohio Constitutions. This error had a substantial and injurious effect or influence in determining the jury's verdict. [sic]
>
> **GROUND FIVE:** The trial court was in breach of The Golden Rule of Law, the treaty Pactum De Singularis Caelum (Covenant), Canon of Positive Law Article(s) 24-Rolls that divested the Trial court of Subject Matter Jurisdiction that was void ab initio. The trial court procured a contract/judgement that (1) lacked "ENTRY OF A PLEA" in the action, (2) failure to be informed of the "NATURE" of the accusations, (3) lack of "CONSENT" OR JOINDER OF Sterling Galen Robinson el with STERLING ROBINSON ESTATE TRUST in the action and (4) The failure of plaintiff to produce sufficient evidence of the Right to Joinder of Person in the action, which constituted fraud and automatically rendered such action a Misjoinder. this is repugnant to due process of law of the 5th and 14th amendment guaranteed by the United States and Ohio Constitutions. This error had a substantial and injurious effect or influence in determining the jury's verdict. [sic]

(Doc. 1 at PageID #5-13).

On March 14, 2023, Respondent filed a Return of Writ. (Doc. 5). Respondent contends that Petitioner's claims are procedurally defaulted and lack merit. Specifically, Respondent argues Petitioner failed to exhaust, and thus, subsequently procedurally defaulted all of his grounds for relief, Ground One was rejected by the Court of Appeals on the merits, and Grounds Two through Five are frivolous. (*Id.* at PageID #294-296, 298-303).

## II.   MOTION FOR SUMMARY JUDGMENT

On July 24, 2023, Petitioner filed a Motion for Summary Judgment. (Doc. 13). Petitioner argues the merits of his petition, advancing a detailed "sovereign citizen" theory for why he is entitled to relief.  Petitioner's arguments have been considered, and for the reasons explained below, it is recommended that Petitioner's Motion for Summary Judgment be denied.

6

### III. STANDARDS OF REVIEW

**A. AEDPA**

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214, apply to this case. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA limits the circumstances under which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding.

Specifically, under AEDPA, a federal court shall not grant a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors. This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 2015). Additionally, this Court's habeas review is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

**B. Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so,

but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-278 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted." It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

8

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court determines that a state procedural rule was not complied with and the rule has an adequate and independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. In order to establish cause, a petitioner must show that "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001).

IV. **DISCUSSION**

A. **Procedural Default**

Respondent contends that the ineffective assistance of appellate counsel claim in Ground One is procedurally defaulted because, although Petitioner presented the claim to the Court of Appeals in his Rule 26(B) motion to reopen his direct appeal, he failed to seek review with the Supreme Court of Ohio. (Doc. 5 at PageID #294). Respondent argues that Petitioner's ineffective assistance of trial counsel claim in Ground One is also procedurally defaulted because it was never

9

raised on direct appeal. (*Id.*) Respondent argues that Grounds Two through Five are procedurally defaulted because Petitioner never presented them for review to the Ohio state courts. (*Id.*)

The record reflects that Petitioner raised an ineffective assistance of appellate counsel claim in his Rule 26(B) motion to reopen his direct appeal, but procedurally defaulted this claim when he failed to appeal the denial of his Rule 26(B) motion to reopen to the Ohio Supreme Court. Petitioner never filed a notice of appeal from the denial of his motion to reopen and may not now file a delayed appeal under Rule II, Section 2(A)(4)(b), Rules of Practice of the Supreme Court of Ohio ("The provision for delayed appeal applies to appeals on the merits and does not apply to appeals involving postconviction relief...."). The record also reflects that he never raised an ineffective assistance of trial counsel claim on direct appeal. Although Petitioner argues that appellate counsel was ineffective for failing to raise this issue, his ineffective assistance of counsel claim cannot serve as cause for his procedural default or as an independent claim for relief because this ground has in itself been procedurally defaulted. *See Edwards v. Carpenter,* 529 U.S. 446, 452–453, (2000).

The record also reflects that Petitioner never presented Grounds Two through Five to the Ohio state courts. A petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28 (1982). In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have then been raised at that time,

10

the claim is procedurally defaulted. *Id.* Petitioner could have but failed to raise Grounds Two through Five on direct appeal, which renders these grounds for relief also procedurally defaulted.

Petitioner procedurally defaulted all five grounds for relief in his petition by failing to properly exhaust his state remedies, which are now unavailable. In any event, as discussed below, all five grounds for relief lack merit even if they were not procedurally defaulted.

## B. Ground One

In Ground One, Petitioner contends that his trial counsel was ineffective for failing to file a motion to suppress the evidence obtained from the warrant for the GPS tracker on his vehicle and his appellate counsel was ineffective for failing to assert this claim in his direct appeal. The Court of Appeals addressed Petitioner's ineffective assistance of appellate counsel claim in his Rule 26(b) motion to reopen his direct appeal. (Doc. 5 at PageID #263-271). Petitioner argued that the evidence should have been suppressed because the warrant application language was similar to the language used in the warrant used for his co-defendant and because it referenced an anonymous source. (*Id.*). The Appeals Court concluded that a motion to suppress would not have been successful because the warrant included accurate information that was neither misleading nor false. (*Id.*).

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth a two-prong test for assessing ineffective assistance of counsel claims: (1) "the defendant must show that counsel's performance was deficient," and (2) "the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. Counsel's failure to raise an issue on appeal amounts to ineffective assistance of counsel only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011). An appellate attorney need not advance every argument, regardless of merit, urged by an appellant. *Jones v. Barnes*, 463

11

U.S. 745, 751-52 (1983). Moreover, a strong presumption of effectiveness applies, and this Court must "consider a number of factors, including whether the omitted issues [were] significant and obvious and whether they were clearly stronger than those presented in the actual appeal." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015). *See also Mapes v. Coyle*, 171 F.3d 408, 427-29 (1999) (setting forth non-exhaustive list of factors to consider).

Petitioner is not entitled to relief on his ineffective assistance of trial or appellate counsel claim. Petitioner has not demonstrated that the Ohio Court of Appeals' decision was an unreasonable application of the *Strickland* standard or based on an unreasonable determination of the facts. The Ohio appeals court reasonably determined that appellate counsel was not deficient in failing to raise the ineffective assistance of trial counsel claim, as trial counsel would not have prevailed on a motion to suppress the evidence obtained through the warrant for the GPS tracking device. *See Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008) ("if the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal"); *Willis v. Smith,* 351 F.3d 741, 745 (6th Cir. 2003) ("appellate counsel cannot be ineffective for failure to raise an issue that lacks merit") (citation omitted); *Alder v. Burt,* 240 F. Supp. 2d 651, 670 (E.D. Mich. 2003) ("Failing to present meritless objections at trial or meritless claims on appeal is not ineffective assistance of counsel.") (citing *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999)).

Petitioner has failed to establish that the Court of Appeals unreasonably applied *Strickland* to the facts of his case. Even if Petitioner had not procedurally defaulted Ground One, it lacks merit.

### C. Grounds Two, Three, Four, & Five

12

In Grounds Two, Three, Four, and Five, Petitioner contends that the trial court lacked jurisdiction over him based on a "sovereign-citizen" theory or contentions largely analogous to what courts across the country have called "sovereign citizen" claims, which involve claims and defenses filed by individuals who believe they are not United States citizens and therefore not subject to government authority.

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner's claims, as interpreted by the Court, do not entitle him to relief. His reliance on "sovereign citizen" theory, the Golden Rule of Law, the Treaty Pactum De Singularis Caelum (Covenant), and Canon of Positive Law Article 28- Spiritual Rights, to argue that he is exempt from prosecution and beyond the jurisdiction of the state or federal courts is frivolous. The same or similar arguments have been repeatedly rejected by other courts and are rejected by this Court. *See, e.g.*, *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011), *cert. denied*, 565 U.S. 1226 (2012) (stating "[r]egardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts"); *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992), *cert. denied*, 508 U.S. 952 (1993) (describing the "sovereign citizen" defense to jurisdiction as "patently frivolous"); *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (describing "sovereign citizen" defense to prosecution as having "no conceivable validity in American law"); *United States v. White*, 480 F. App'x 193, 194, 2021 WL 1560447, at *1 (4th Cir. 2012) (providing "[n]either the citizenship nor the heritage of a defendant constitutes a key ingredient to a ... court's jurisdiction in criminal prosecutions ...."); *Martin v. McConnell*, No. 1:20-CV-079-P, 2020 WL 1970559, at *2 (W.D.La. Apr. 1, 2020) (stating "habeas claims relying on the UCC and trust laws

13

have been repeatedly rejected" and citing cases); *Dunham v. Davis*, 3:18-CV-0179, 2018 WL 3213241, at *1 (S.D. Tex. June 29, 2018) (rejecting "flesh-and-blood man" and "sovereign citizen" claims as a basis for habeas relief); *Berman v. Stephens*, 4:14-CV-860, 2015 WL 3622694, at *2 (N.D. Tex. June 10, 2015) (denying habeas petition relying on UCC and "secured party sovereign" theory as frivolous); *Figueroa-Hernandez v. Figueroa Hernandez*, No. 7:08-CV-00498, 2008 WL 4533940, at *3 (W.D.Va. Oct. 7, 2008) (finding "no grounds upon which an inmate may use civil commercial statutes or admiralty jurisdiction to challenge the fact or length of his confinement"). *see also United States v. Amir*, 644 F. App'x 398, 399 (6th Cir. 2016) (rejecting defendant's attempt to argue that he was not a citizen of the United States, but a citizen of the "Republic of Ohio," to whom federal courts' jurisdiction did not apply); *see also United States v. Ward*, 1999 WL 369812, at *2 (9th Cir.) (holding claims based on "sovereign citizen" theories may be dismissed without "extended argument" as patently frivolous).

Petitioner is not entitled to relief on Grounds Two through Five.

Accordingly, in sum, the petition should be denied on the basis that petitioner's grounds for habeas relief are procedurally defaulted and without merit. In light of this recommendation, petitioner's pending motion for summary judgment should also be denied.

V. **CONCLUSION**

The entire petition is procedurally defaulted, and alternatively, is without merit. It is therefore **RECOMMENDED** that the habeas petition be **DENIED,** and this action be **DISMISSED WITH PREJUDICE.**

For the foregoing reasons, the Undersigned **RECOMMENDS:**

1. Petitioner's Motion for Summary Judgment (Doc. 13) be **DENIED**.

14

2. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

3. A certificate of appealability should not issue with respect to the petition because petitioner has not stated a "viable claim of the denial of a constitutional right" or presented an issue that is "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4. With respect to any application by a petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** any petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO RECOMMENDED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge